UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| CARROLL WESLEY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 09-317-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*    \*\*\*    \*\*\*    \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Carroll Wesley and Defendant Michael J. Astrue, Commissioner of Social Security. [Record Nos. 8-10] Wesley argues that an administrative law judge ("ALJ") erred in finding that he is not entitled to a period of disability, Social Security Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). However, the Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed. For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief sought by Wesley.

**I.**

Wesley protectively filed for a period of disability, SSI, and DIB on June 13, 2007, alleging that his disability began on May 29, 2007. [Tr., pp. 8, 92-99][1] However, his claims were denied initially and upon reconsideration. [Tr., pp. 66-69, 72-77] On April 15, 2009,

---

[1]    The ALJ states that Wesley's filing occurred on June 4, 2007. [Tr., pp. 8, 15]

Wesley, along with a non-attorney representative and vocational expert ("VE") Bill Ellis appeared before ALJ Frank Letchworth for the administrative hearing. [Tr., pp. 16-44] On July 8, 2009, the ALJ issued an opinion denying Wesley's applications. [Tr., pp. 5-15] The Appeals Council denied Wesley's request for review on September 4, 2009. [Tr., pp. 1-4] Having exhausted his administrative remedies, Wesley commenced this proceeding.

Wesley was fifty years old at the time of the administrative hearing. [Tr., pp. 92, 96] He dropped out of school when he was in the ninth grade. [Tr., p. 10, 20] Wesley previously worked as a laborer for various pallet mills for approximately twenty-five years. [Tr., p. 10, 112] After reviewing the record and the testimony presented during the administrative hearing, the ALJ concluded that Wesley has the following combined severe impairments: coronary artery disease (status post myocardial infarctions in 2007 and 2009, status post stenting in 2007 and 2008 and status post two vessel coronary artery bypass grafting in 2009) and a history of hypertension, dyslipidemia and tobacco abuse. [Tr., p. 10, ¶ 3] Notwithstanding these impairments, the ALJ concluded that Wesley retained the residual functional capacity ("RFC") to perform light work. [Tr., p. 13] The ALJ further determined that Wesley:

> can sit for no more than 4 of 8 hours, stand for no more than 2 of 8 hours, and walk for no more than 2 of 8 hours. He cannot climb and can perform no more than occasional squatting or crawling and no more than frequent bending. He must avoid exposure to unprotected heights, hazardous machinery and workplace hazards. He can tolerate no more than occasional driving or operating a motor vehicle and no more than occasional exposure to pulmonary irritants and temperature extremes.

[Tr., p. 13] Based upon this assessment, the ALJ determined that Wesley had not been under a disability as defined in the Social Security Act, from May 29, 2007, through July 8, 2009, (the date of the decision). [Tr., p. 15]

**II.**

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)); *see also* 20 C.F.R. 416.920(a)(4). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, a claimant must demonstrate that he is not currently engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b); 20 C.F.R. § 416.920(b). Second, a claimant must show that he suffers from a severe impairment. 20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 1520(d); 20 C.F.R. § 416.920(d). Fourth, if the Commissioner cannot make a determination of disability based on medical

evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's RFC and relevant past work to determine whether he can do past work. If he can, he is not disabled. 20 C.F.R. § 1520(f); 20 C.F.R. § 416.920(f).

Under the fifth step of the analysis, if the claimant's impairment prevents him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 1520(g); 20 C.F.R. § 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Wesley v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for social security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also

supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### III.

Wesley alleges that the ALJ's decision denying benefits: (1) is not supported by substantial evidence; (2) failed to consider his combination of impairments; and (3) failed to consider his testimony regarding the effects of his medical impairments. Wesley further asserts that the ALJ relied on the VE's answers to inaccurate hypotheticals relating to his RFC. These arguments are addressed below.

**A.  Substantial Evidence**

Wesley contends that the Commissioner denied his DIB and SSI claims based on findings that, despite his severe impairments, Wesley can still perform light level work; his testimony was not credible; there are a significant number of jobs in the national economy that he can perform; and he is not disabled within the meaning of the Social Security Act. Wesley argues that these findings are not supported by substantial evidence. He further asserts that medical evidence establishes that his impairments meet the requisite level of severity to qualify him as disabled. Wesley details the medical history that supports his claim for disability but does not provide any rationale demonstrating that the ALJ's findings are not supported by substantial evidence. In fact, the ALJ goes into great detail discussing Wesley's medical history and his reasons for

denying his claims for DIB and SSI. [Tr., pp. 10-15] Having reviewed the ALJ's opinion, the Court concludes that his decision is supported by substantial evidence.

### B. Combined Effect of Impairments

Wesley maintains that the ALJ did not properly consider his pain and combination of exertional and non-exertional impairments. In determining whether a claimant is disabled, an ALJ must consider all symptoms, including pain. *See* 20 C.F.R. § 404.1529 (2010). The ALJ is required to consider the combined effect of all the claimant's impairments in determining whether the claimant is disabled. 20 C.F.R. § 404.1523; 20 C.F.R. 416.923. The Sixth Circuit has held that "[a]n ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a 'combination of impairments' in finding that the plaintiff does not meet the listings." *Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990) (*citing Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987)).

In the present case, ALJ Letchworth made a specific finding that Wesley "does not have an impairment, *or combination thereof*, that meets or medically equals one of the listed impairments" in the applicable regulations. [Tr., p. 13 (emphasis added)] He also made references in his decision to Wesley's "impairments" (plural) and discussed each impairment in detail. [Tr., pp. 10-15] Further, the ALJ goes through Wesley's medical history line-by-line detailing the medical records from Dr. Burchett, Dr. Veligandla, Dr. Imam, and nurse practioner Tim Poynter. [Tr., pp. 10-12]

Regarding Wesley's argument that the ALJ did not properly consider his pain, the ALJ specifically notes that Wesley complained of ongoing chest pain if he lifts anything, and he continues to have quite a bit of breathing problems. [Tr., p. 10] In addition, the ALJ recognized his obligation to consider all symptoms, including pain, to the extent to which the symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence. [Tr., p. 13] Throughout ALJ Letchworth's analysis of the medical history he discussed various instances of Wesley not being in pain:

> [On June 4, 2007, he] reported that he had been walking around in the house and yard without any significant problems or shortness of breath. On July 2, [2007,] he reported that he was doing, actually felt pretty good and was getting out and about more. . . . On October 11, the claimant reported that he was doing well and feeling better. In fact he reported having no chest pain at all and described no real shortness of breath. Follow-up notes dated November 21, [2007], indicate that the claimant had walked ½ mile to store and experienced only a "little bit" of chest. . . . Dr. Burchett described his history as 'pretty stable for at least several months.' . . . The claimant ambulated with a normal gait, appeared stable at station and appeared comfortable in both the sitting and supine position. . . . [B]y April 18, [2008] he reported that he was . . . experiencing only occasional chest pain, while stating that he experienced chest pain and shortness of breath only if he was out and walking around 'much.' . . . [Dr. Veligandla] opined that the claimant could sit for 4 hours, stand for 2 hours and walk for 2 hours; and lift 20 pounds occasionally and 10 pounds frequently. . . . [O]n February 20, [2009,] . . . he reported feeling well and breathing good. . . . On February 24, [2009,] cardiologist Dr. Mohammed Imam also noted that the claimant was doing very well.

[Tr., pp. 11-12] It is clear from the opinion that the ALJ properly considered Wesley's statements concerning his pain, but found them to be not credible. [Tr., pp. 13-14]

**C.  Wesley's Testimony**

The ALJ found that Wesley's "medically determinable impairments could reasonably be expected to caused the alleged symptoms; however, the claimant's statements concerning the

-7-

intensity, persistence and limiting effects of these symptoms are not credible." [Tr., p. 14] Wesley asserts that his testimony is corroborated by the medical evidence; therefore, it should have been found credible. It is well-established that blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007).

The ALJ thoroughly discussed his reasons supporting this finding. [Tr., p. 13] The ALJ discussed how Wesley's testified that he stopped smoking after his May 2007 heart attack [Tr., p. 23], but the medical records clearly contradict this testimony. The medical records show that he was "strongly encouraged to quit smoking in November 2007, and the claimant admitted that he continued to smoke in March 2008 during a consultative examination with Dr. Burchett. In addition, the ALJ observed that Wesley has a history of non-compliance with medications. The ALJ pointed out that Wesley did know what his medications were during a May 2008 emergency room visit; he admitted to not taking Plavix during his January 2009 hospitalization; and he told nurse practioner Poynter that he was not taking his medications on February 20, 2009.

The ALJ is charged with the responsibility of observing the demeanor and credibility of witnesses. *Bradley v. Sec'y of Health and Human Servs*, 862 F.2d 1224, 1227 (6th Cir. 1988) *(citing Kirk v. Sec'y of Health and Human Servs*, 667 F.2d 524, 538 (6th Cir. 1981)). Therefore, his conclusions regarding credibility should be highly regarded. *Id*. Wesley's assertion that his testimony should be found credible simply because it is corroborated by the medical evidence is not legally sound. The ALJ clearly provided detailed reasons for the determination that

Wesley's statements concerning the intensity, persistence and limiting effects of his symptoms are not credible.

### D. Vocational Expert

Finally, Wesley argues that the ALJ erred in formulating his hypothetical questions to the VE. Specifically, Wesley asserts that the hypothetical questions on which the ALJ relied were not supported by substantial evidence because they failed to incorporate Wesley's limitations. In *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235 (6th Cir. 2002), the Sixth Circuit reversed the Commissioner's denial of benefits because a faulty hypothetical question did not accurately describe the claimant's abilities. As the court noted, hypothetical questions posed to VEs for the purpose of determining whether a claimant can perform other work should be a complete and accurate assessment of the claimant's physical and mental state which should include an "accurate portrayal of her individual physical and mental impairments." *Id.* at 239; *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987); *Myers v. Weinberg*, 514 F.2d 293, 294 (6th Cir. 1975).

Where a hypothetical question fails to describe accurately the claimant's physical and mental impairments, the defect can be fatal to the VE's testimony and the ALJ's reliance on it. *Ealy v. Commissioner of Soc. Sec'y*, 594 F.3d 504, 516 (6th Cir. 2010) (citations omitted). An ALJ, however, is not required to restate verbatim a medical report to a VE in order to accurately state a claimant's relevant impairments. *Id.* Thus, the central question is not whether the hypothetical question posed to the VE recounts all of the medical findings, impairments and conditions, but whether it is a fair, complete and accurate summation regarding the claimant's

abilities and overall mental and physical state, based upon the available evidence and testimony. *See Foster v. Halter*, 279 F.3d 348, 356 (6th Cir. 2001); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001); *Felinsky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Davis v. Sec'y of Health & Human Servs.*, 915 F.2d 186, 189 (6th Cir. 1990); *Varley*, 820 F.2d at 779. Hypothetical questions need only incorporate those limitations which the ALJ has accepted as credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230,1 235 (6th Cir. 1993).

At Wesley's administrative hearing, the ALJ asked the VE numerous hypothetical. First, the ALJ established Wesley's past relevant work. The VE classified this past relevant work as sawmill worker and that he performed at a light exertional level with a SVP of 4. [Tr., p. 40] The ALJ's first hypothetical asked the VE if he was capable of past relevant work if he had to "avoid concentrated exposure to extreme hot or cold temperatures" and work at medium exertion. [Tr., p. 40] The VE opined that he could not perform past relevant work with these limitations. [Tr., p. 41] However, taking into account his age and education, the VE found he could be a dishwasher or a hand packer.

> The ALJ also asked a second hypothetical question, with the following physical restrictions:
>
> Light exertion, no exposure – no concentrated exposure to temperature extremes or excessive humidity or pulmonary irritants. This will include dust, fumes, odors, gases. No unprotected heights or hazardous machinery.

[Tr., p. 41] The ALJ asked the VE if there are any jobs Wesley could do under such conditions, given his age and education. The VE replied that he could be a hand packer or a packaging and filling machine operator.

The next hypothetical assumed the following:

> light exertion. Total sitting in an eight-hour day will be limited to four hours. Total standing or walking, each in an eight-hour day, will be limited to two hours. No climbing, no more than occasional squatting or crawling, no more tan frequent bending, no work at unprotected heights or hazardous machinery around hazards. No more than occasional driving or operating motorized vehicle. No more than occasional exposure to pulmonary irritants or temperature extremes.

[Tr., p. 42] Once again, the ALJ asked if these limitations would affect his answer to the prior hypothetical. The VE opined that with these limitations, there are no jobs that could be performed. The ALJ altered this hypothetical to allow a person to "stand for two hours out of eight and, in addition, walk two hours out of eight." Under these restrictions, the VE determined that the jobs that could be performed include a hand packer and a packaging and filling machine operator.

Wesley contends that the VE testified that Wesley could not worked based on an inability to perform an 8-hour work day, but the ALJ found he could perform light level work. However, as shown above, this is a mischaracterization of the VE's testimony. The ALJ's hypotheticals were consistent with Dr. Veligandla's medical opinions (sit for 4 hours, stand for 2 hours, and walk for 2 hours in an 8-hour day; no more than frequent bending, no climbing, no more than occasional squatting or crawling; and moderately limited exposure to moving machinery, temperature extremes, and excessive humidity). [Tr., pp. 12, 541] ALJ Letchworth's hypotheticals were a complete and accurate portrayal of Wesley's individual physical and mental impairments based on what he had accepted as credible. The ALJ properly utilized the testimony of the VE and the framework of the Medical-Vocational Guidelines to determine that a significant number of jobs existed in the national economy that Wesley could perform.

## IV.

The ALJ's decision denying benefits is supported by substantial evidence. Accordingly, it is hereby **ORDERED** as follows:

(1) Plaintiff Carroll Wesley's Motion for Summary Judgment [Record Nos. 8 and 9] is **DENIED**;

(2) Defendant Michael J. Astrue's Motion for Summary Judgment [Record No. 10] is **GRANTED**; and

(3) The administrative decision will be **AFFIRMED** by separate Judgment entered this date.

This 15th day of April, 2010.

Signed By:
*Danny C. Reeves* DCR
United States District Judge